Mary Jo O'Neill, AZ Bar #005924
Hillary K. Valderrama, TX Bar # 24075201
Wasan Awad, AZ Bar #025352
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5003
Fax: (602) 640-5009
Email:  mary.oneill@eeoc.gov
        hillary.valderrama@eeoc.gov
        wasan.awad@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>            Plaintiff,<br><br>     vs.<br><br>ValleyLife, an Arizona corporation,<br><br>            Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMAND)** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991 against Defendant ValleyLife, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Glenn Stephens and a class of individuals with disabilities, including but not limited to Ibrahim Mansaray, Sanfee Dorley, Ashley Hupcik, Barbara Davis, Christiana Mitchell, and Anita Yavo, and other aggrieved individuals, who were adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Valley Life terminated the employment of Glenn Stephens and a class of qualified individuals with disabilities because of disability rather than providing

reasonable accommodation, and further, discriminated against Glenn Stephens and a class of qualified individuals with disabilities by maintaining an inflexible 12-month leave policy which did not provide for reasonable accommodation and which instead provided for termination of employment, all in violation of the ADA.  In addition, the Commission alleges that Defendant commingled medical records with personnel records and failed to maintain these medical records confidential.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. Section 706(f)(1), (3) 42 U.S.C. §2000e-5(f)(1), (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981A.

2. The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1), (3), 42 U.S.C. § 2000e-5(f)(1), (3).

4. At all relevant times, Defendant ValleyLife, an Arizona corporation, has continuously been and is now doing business in the State of Arizona and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g)

and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## GENERAL ALLEGATIONS

### I.  Conditions Precedent

7. More than thirty days prior to the institution of this lawsuit, Glenn Stephens filed a charge of discrimination with the EEOC alleging violations of Title I of the ADA by Defendant.

8. The EEOC provided Defendant with notice of the charge of discrimination.

9. The EEOC investigated the charge of discrimination.

10. Based on evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Defendant engaged in certain unlawful employment practices identified in the determination.

11. The EEOC's determination included an invitation for Defendant to join the Commission in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

12. Defendant agreed to participate with the EEOC in this informal conciliation process.

13. The EEOC and Defendant were unable to reach an agreement through the conciliation process.

14. The EEOC sent notice to the Defendant that conciliation efforts had failed.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

### II.  Defendant ValleyLife, Inc.

16. Since at least October 2009, Defendant has engaged in unlawful employment practices in violation of § 102 of Title I of the ADA, 42 U.S.C. § 12112.

17. Defendant is a local company with numerous locations throughout the

Phoenix metropolitan area in Arizona.

18. Defendant is a non-profit organization that serves the developmentally disabled.

19. Defendant is headquartered in Phoenix, Arizona.

## STATEMENT OF CLAIMS

20. Since at least October 2009, Defendant has terminated the employment of qualified individuals with disabilities because of disability, rather than providing reasonable accommodation in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

21. Since at least October 2009, Defendant has maintained an inflexible leave policy that does not provide for reasonable accommodation of qualified individuals with disabilities and which instead provides for termination of their employment, in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

22. Since at least October 2009, Defendant has maintained an inflexible leave policy under which employees are discharged upon exhausting available paid time off and/or any unpaid leave to which they are eligible under the Family Medical Leave Act (FMLA). Defendant uses its inflexible leave policy as a qualification standard, employment test or other selection criteria that screens out or tends to screen out individuals with disabilities and is not job-related and consistent with business necessity in violation of Sections 102(a) and 102(b)(6), 42 U.S.C. §§ 12112(a) and 112(b) (6).

23. Since at least October 2009, Defendant's method of administering its inflexible leave policy has the effect of discriminating on the basis of disability by denying qualified individuals with disabilities reasonable accommodations, and instead terminating their employment. Defendant's method of administering its inflexible leave policy is not job-related and consistent with business necessity, in violation of Sections 102(a) and 102(b)(3)(A), 42 U.S.C. §§ 12112(a) and 112(b)(3)(A).

24. Since at least October 2009, Defendant has violated Section 102(d)(3)(B)

of the ADA by commingling medical records in employee personnel files and failing to maintain these medical records confidential.

25. Each individual for whom the EEOC seeks relief in this action is a qualified individual with a disability who could perform the essential duties of the job he or she had or desired with or without a reasonable accommodation. Because disabilities, and the reasonable accommodations appropriate for particular individuals with disabilities, may vary significantly, the reasonable accommodations which Defendant should have made available to class members to permit them to perform the essential functions of the jobs they held or desired (with or without reasonable accommodation) would not have all been the same. The reasonable accommodations would have varied from class member to class member on an individual basis, as determined through an interactive process between ValleyLife and the individual class members. However, rather than engage in that interactive process and reasonably accommodate these class members, without undue hardship to itself, ValleyLife terminated the class members' employment.

26. For example, Glenn Stephens is a qualified individual with a disability who, throughout his employment with Defendant, could perform the essential functions of his job as a residential supervisor with or without an accommodation. Stephens began working for ValleyLife in 1998 and worked for ValleyLife for over a decade before being forced out in October 2009. His position at the time of the events described in this complaint was as a residential supervisor.

37. Stephens satisfactorily performed the essential functions of his job during the time that he worked for Defendant.

38. In October 2009, Stephens became aware that he would need heart surgery to correct physical damage he incurred as a result of an earlier work-related injury. His sternum or breastbone sustained a serious blow during this incident and is now unstable.

39. Stephens' unstable sternum is an impairment that substantially limits the major life activities of lifting, working, and the operation of the musculoskeletal bodily function .

40. At all relevant times, Stephens was a qualified individual with a disability as defined by the ADA.

41. In October 2009, Stephens notified Defendant of his medical condition and his need to undergo surgery.

42. Defendant investigated Stephens' eligibility for leave under the FMLA, 29 U.S.C. § 2601 *et seq*.

43. The FMLA entitles eligible employees of covered employers to up to twelve (12) weeks of job-protected, unpaid leave during any 12-month period, for care of the employee's own serious health condition.

44. On or about October 8, 2009, Defendant received a physician statement indicating that Mr. Stephens had certain physical restrictions, including no lifting, but that those restrictions would be subject to reevaluation following his surgery.

45. On or about October 15, 2009, Defendant received a physician statement from Cardiovascular Consultants, Ltd., again indicating that Stephens had certain physical restrictions but that those restrictions would be subject to reevaluation following his surgery.

46. Defendant determined that Stephens had exhausted his FMLA entitlement for the certification period.

47. On or about October 16, 2009, Defendant notified Stephens that it would allow him to work on light-duty until his surgery date but then would require him to resign his position because Stephens had exhausted his FMLA entitlement for the certification period.

48. Stephens asked Nancy Glossa, Defendant's human resources manager, if he could take unpaid leave instead. Glossa informed him that Defendant does not allow for unpaid leave in excess of an employee's FMLA entitlement.

49. Defendant did not initiate or engage with Stephens in any interactive process to identify potential needed accommodations, including but not limited to additional unpaid leave.

50. The reasonable accommodations proposed by Stephens would not have imposed an undue hardship on the operation of Defendant's business.

51. Rather than accommodating Stephen's request for additional unpaid leave needed for medical treatment of his disability, Defendant terminated Stephens' employment on or about October 30, 2009.

52. Defendant discharged Stephens, pursuant to its policy described in paragraph 21, rather than accommodating him by extending his leave, offering him other reasonable accommodations, or returning him to work in an available position which he could have performed, in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

53. By discharging Stephens in accord with the Company's inflexible leave policy and the method in which it was administered, the Company imposed a job retention qualification standard that screened out an individual with a disability and that had the effect of discriminating on the basis of disability which was not job-related for the position or consistent with business necessity in violation of Sections 102(a) and 102(b)(3)(A) and (b)(6) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(6).

54. Another example is Christiana Mitchell who was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of her job with Defendant as a direct support professional. Mitchell began working for ValleyLife in 2008, and was discharged in 2011. The position she held at the time of the events described in this complaint was direct support professional.

55. Mitchell satisfactorily performed the essential functions of her job during the time she worked for Defendant.

56. In November 2010, Mitchell fractured her foot. At the time of the events described in this complaint, Mitchell's fractured foot was an impairment that substantially limited the major life activities of walking and working.

57. At all relevant times, Mitchell was a qualified individual with a disability as

defined by the ADA.

58. In November 2010, Mitchell notified Defendant of her medical condition and her need for leave.

59. Mitchell took 12 weeks FMLA leave from November 2010 to January 2011.

60. Defendant contacted Mitchell in January 2011, prior to the expiration of her FMLA leave, and asked when she could return to work.

61. Mitchell informed Defendant in January 2011, that she was to be examined by her orthopedic surgeon on or about January 14, 2011, and would then provide Defendant with an expected return to work date.

62. Defendant determined that Mitchell had exhausted her FMLA entitlement for the certification period.

63. Defendant did not initiate or engage with Mitchell in any interactive process to identify potential needed accommodations, including but not limited to additional unpaid leave.

64. Defendant discharged Mitchell on or about January 6, 2011, pursuant to its policy described in paragraph 21, rather than accommodating her by extending her leave, offering her other reasonable accommodations, or returning her to work in an available position which she could have performed, in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

65. By discharging Mitchell in accord with the Company's inflexible leave policy and the method in which it was administered, the Company imposed a job retention qualification standard that screened out an individual with a disability and that had the effect of discriminating on the basis of disability which was not job-related for the position or consistent with business necessity in violation of Sections 102(a) and 102(b)(3)(A) and (b)(6) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(6).

66. Another example is Ashley Hupcik, who was a qualified individual with a

disability who, with or without reasonable accommodation, could perform the essential functions of her job with Defendant as a direct support professional. Hupcik began working for ValleyLife in July 2010, and was discharged in September 2010. The position she held at the time of the events described in this complaint was direct support professional.

67. Hupcik satisfactorily performed the essential functions of her job during the time she worked for Defendant.

68. On or about July 2010, Hupcik was injured during performance of her duties as a direct support professional for Defendant. This injury resulted in separation of the placenta from Hupcik's uterine wall.

69. On or about September 1, 2010, Hupcik informed Defendant that she was pregnant.

70. Hupcik took leave on or about September 2, 2010, due to the pregnancy complication described in paragraph 68, and returned to work for Defendant on or about September 14, 2010.

71. Upon returning to work on or about September 14, 2010, Hupcik informed Defendant that her doctor restricted her from lifting greater than 20 pounds due to the pregnancy complication that resulted from the injury described in paragraph 68.

72. At the time of the events described in this complaint, Hupcik's pregnancy complication was an impairment that substantially limited the major life activity of lifting.

73. Defendant did not initiate or engage with Hupcik in any interactive process to identify potential needed accommodations, including but not limited to unpaid leave.

74. Defendant discharged Hupcik on or about September 14, 2010, rather than accommodating her by providing unpaid leave, offering her other reasonable accommodations, or returning her to work in an available position which she could have performed, in violation of Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

75. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

76. The effect of the policies and practices complained of in the paragraphs above was to deprive Stephens and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

77. The unlawful employment practices complained of in the foregoing paragraphs were and are intentional.

78. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of a class of qualified individuals with disabilities.

## **FIRST CLAIM FOR RELIEF**

**Failure to Provide Reasonable Accommodation**

**42 U.S.C. §§ 12112(a) and (b)(5)(A)**

79. EEOC reasserts and incorporates by reference all of the foregoing allegations.

80. Glenn Stephens is a qualified individual with a disability.

81. Defendant failed to make reasonable accommodation to the physical and mental limitations of Stephens and a class of other qualified employees with disabilities, in violation of 42 U.S.C. §§ 12112(a) and (b)(5)(A).

82. Defendant failed to initiate or engage with Stephens, and a class of other qualified employees with disabilities, to identify the precise limitations resulting from their disabilities and potential accommodations that could overcome those limitations.

83. The effect of the practices complained of in the paragraphs above has been to deprive Stephens and a class of individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

84. The unlawful employment practices complained of in the foregoing

paragraphs were and are intentional.

85. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Stephens and a class of individuals with disabilities.

86. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## SECOND CLAIM FOR RELIEF

### Discriminatory Discharge

### 42 U.S.C. §§ 12112(a)

87. EEOC reasserts and incorporates by reference all of the foregoing allegations.

88. Glenn Stephens is a qualified individual with a disability.

89. Defendant terminated Stephens, and a class of other qualified employees with disabilities, because of their disabilities and/or because they had physical or mental limitations requiring reasonable accommodation in violation of 42 U.S.C. § 12112(a) and 12112(b)(5)(A).

90. Several other qualified employees with disabilities were compelled to resign their positions and/ or were terminated due to the intolerable conditions created by Defendant's refusal to provide reasonable accommodations and its adherence to its inflexible leave policy or practice.

91. The unlawful employment practices complained of in the foregoing paragraphs were and are intentional.

92. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of Stephens and the other aggrieved individuals.

93. The unlawful employment practices complained of in the foregoing paragraphs are continuous and ongoing.

## THIRD CLAIM FOR RELIEF

**Use of Standards, Criteria, or Methods of Administration that Have the Effect of Discrimination on the Basis of Disability**

**Defendant's Inflexible Leave Policy**

**42 U.S.C. §§ 12112(a) and (b)(3)**

94. EEOC reasserts and incorporates by reference all of the foregoing allegations.

95. Defendant's method of administering its inflexible leave policy, has the effect of discrimination on the basis of disability and is not job-related and consistent with business necessity, in violation of 42 U.S.C. § 12112(a) and 12112(b)(3)(a) of Title I of the ADA, 42 U.S.C. § 12112(a) and 12112(b)(3)(A).

96. The effect of the inflexible leave policy complained of in the foregoing paragraphs has been to deprive Stephens and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

97. The unlawful inflexible leave policy complained of in the foregoing paragraphs is continuous and ongoing.

## FOURTH CLAIM FOR RELIEF

**Use of Qualification Standards or Other Selection Criteria that Screen Out or Tend to Screen Out Individuals with Disabilities**

**Defendant's Inflexible Leave Practice or Policy**

**42 U.S.C. §§ 12112(a) and (b)(6)**

98. EEOC reasserts and incorporates by reference all of the foregoing allegations.

99. Defendant uses its inflexible leave practice or policy as a qualification standard or selection criteria that screens out or tends to screen out a class of individuals with disabilities and is not job-related and consistent with business necessity, in violation of Sections 102(a) and 102 (b)(6), 42 U.S.C. §§ 12112(a) and 12112(b) (6).

100. The effect of the inflexible leave practice or policy complained of in the foregoing paragraphs has been to deprive Stephens and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

101. The unlawful inflexible leave policy complained of in the foregoing paragraphs is continuous and ongoing.

## FIFTH CLAIM FOR RELIEF

**Improper Commingling of Medical Records with Employee Personnel Files and Failure to Treat Medical Documents as Confidential Records**

**42 U.S.C. §§ 12112(d)(4)(C) and (d)(3)(B-C)**

102. EEOC reasserts and incorporates by reference all of the foregoing allegations.

103. Defendant has violated Section 102(d)(3)(B) of the ADA by commingling medical records in employee personnel files and failing to keep such medical records confidential as required by statute.

104. The effect of this failure has been to improperly divulge confidential medical information regarding a group of aggrieved individuals and allow unauthorized access to this information.

105. The unlawful co-mingling of confidential medical records with non-medical personnel records and improper disclosure of private medical information was and is intentional.

106. The unlawful co-mingling of confidential medical records with non-medical personnel records and improper disclosure of private medical information was and is being done with malice or with reckless indifference to the federally protected rights of Mr. Stephens and the other aggrieved individuals.

107. The unlawful co-mingling of confidential medical records with non-medical personnel records and improper disclosure of private medical information is continuous and ongoing.

# PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from discriminating against employees because of a disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to cease utilizing its inflexible leave policy in a manner that denies qualified individuals with disabilities reasonable accommodation that would not cause undue hardship.

D. Order Defendant to cease utilizing its inflexible leave policy as a qualification standard, employment test or other selection criteria that screens out or tends to screen out individuals with disabilities and is not job-related and consistent with business necessity.

E. Order Defendant to cease administering its inflexible leave policy using a method that is not job-related and consistent with business necessity and that has the effect of discriminating on the basis of disability by denying qualified individuals with disabilities reasonable accommodations, and instead terminating their employment.

F. Order Defendant to make whole Stephens and a class of qualified individuals with disabilities by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the reinstatement of Stephens and other aggrieved individuals, or front pay in lieu thereof.

G. Order Defendant to make whole Stephens and a class of qualified individuals with disabilities by providing compensation for past and future pecuniary

1  losses resulting from the unlawful employment practices described in the paragraphs
2  above, including but not limited to relocation expenses, job search expenses, and
3  medical expenses, in amounts to be determined at trial.

4        H.     Order Defendant to make whole Stephens and a class of qualified
5  individuals with disabilities by providing compensation for past and future nonpecuniary
6  losses resulting from the unlawful employment practices described in the paragraphs
7  above, including but not limited to emotional pain, suffering, inconvenience, loss of
8  enjoyment of life, humiliation, loss of credit standing, and stress, in amounts to be
9  determined at trial.

10        I.     Order Defendant to pay Stephens and a class of qualified individuals with
11  disabilities, punitive damages for its malicious or reckless conduct described in the
12  paragraphs above, in amounts to be determined at trial.

13        J.     Grant such further relief as this Court deems necessary and proper in the
14  public interest.

15        K.     Award the EEOC its costs of this action.

16  **JURY TRIAL DEMAND**

17  The Commission requests a jury trial on all questions of fact raised by its
18  Complaint.

19  RESPECTFULLY SUBMITTED this 25th day of February, 2015.

20

21             MARY JO O'NEILL
           Regional Attorney
22

23             HILLARY K. VALDERRAMA
           Supervisory Trial Attorney
24

25             */s/ Wasan Awad*
           WASAN AWAD
26             Trial Attorney

27             EQUAL EMPLOYMENT
28             OPPORTUNITY COMMISSION

Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012
(602) 640-4988

Attorneys for Plaintiff