WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | No. CV-15-00340-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| ValleyLife, | |
| Defendant. | |

Pending before the Court are Defendant ValleyLife's Motion for Summary Judgment, (Doc. 88), and Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Partial Summary Judgment, (Doc. 90). The EEOC also filed a Motion to Strike, (Doc. 96), and ValleyLife filed a Motion for Leave to File a Sur-Reply, (Doc. 103). For the following reasons, the Court denies the EEOC's motion to strike as moot, denies ValleyLife's motion for leave to file a sur-reply, and denies both parties' motions for summary judgment.

## BACKGROUND

ValleyLife provides services to disabled individuals living in the greater Phoenix area. (Doc. 89 at 1.) ValleyLife's managers, supervisors, and employees receive no formal training on the Family and Medical Leave Act ("FMLA") or the Americans with Disabilities Act ("ADA"). (Doc. 89, Ex. 2 at 133–38; Doc. 92 at 2, Ex. 2 at 30.) ValleyLife's new hires, however, do receive some general information on the FMLA and the ADA during orientation. (Doc. 89 at 2, Ex. 4 at 32–33.) Nancy Glossa, the manager

of ValleyLife's human resources ("HR") department, received ADA training from a previous source other than ValleyLife.  (Doc. 89, Ex. 2 at 133–138.)  At meetings and luncheons, Glossa would discuss such topics as the requirements of a reasonable accommodation or the interactive process with ValleyLife's employees.  (*Id.*)  Glossa advised ValleyLife managers, supervisors, and employees to speak with her if any ADA-related issue arose with regard to them personally or with regard to ValleyLife employees they supervised.  (*Id.*; Doc. 92 at 2, Exs. 2 at 28, 4 at 29.)  In 2015 ValleyLife's employee handbook was revised to include a description of ADA protections for employees with disabilities.  (Doc. 92 at 3, Ex. 1 at 318.)

Glenn Stephens was a group home supervisor for ValleyLife at the "Tonto" home.  (Doc. 89 at 2; Doc. 92 3–4, Ex. 12 at 8.)  The physical demands required of a group home supervisor, per the ValleyLife job description, included the "[a]bility to lift 40-60 pounds a distance of four feet" multiple times per day.  (Doc. 89 at 2, Ex. 5.)  This requirement existed at all of Valley Life's homes including the Tonto home, at which the clients were ambulatory. (Doc. 89 at 2, Ex. 5 at 37; Doc. 92 at 4, Ex. 12 at 17, 14.)  By Stephens' own admission he lifted 40 to 60 pounds up to 25% of the time as a supervisor, including the time between his injury described below and his resulting surgery.  (Doc. 89 at 2, Ex. 5 at 37.)

In May 2009, while Stephens was working at the Tonto home, a patient struck him in the chest.  (Doc. 89 at 2, Ex. 5 at 30.)  Stephens filled out an incident report at the time but continued working.  (*Id.*; Doc. 92 at 4, Ex. 12 at 29, 13.)  In October 2009, Stephens's physician recommended that he undergo surgery to repair his sternum.  (Doc. 92 at 4, Ex. 15.)  An October 15, 2009 medical assessment confirmed that Stephens should not lift, but he could stand, bend, and kneel, and he could work a 40-hour week.  (Doc. 92 at 4, Ex. 17.)   Jamie Saragosa, Stephens's direct supervisor at the time, and Juanita Shaver, the Program Director at ValleyLife, both contacted Glossa regarding Stephens's surgery.  (Doc. 92 at 4, Ex. 1 at 155, 157.)  Stephens also spoke to Glossa directly and requested leave for his surgery and his recovery, but Glossa denied his request for FMLA leave

because Stephens had already used his 12 weeks of leave within the prior 12-month period. (Doc. 92 at 5, Exs. 1 at 166, 11, 12 at 59–60.) Stephens also requested, and was denied, unpaid personal leave. (Doc. 92 at 5, Ex. 12 at 60.) On October 16, 2009, Saragosa sent Stephens a letter informing him that he would be allowed to work on "light duty" until his surgery, but then he would have to resign. (Doc. 92 at 5, Ex. 18.) ValleyLife admitted that it asked Stephens to resign in its October 16, 2009 letter because "[u]pon learning of Mr. Stephens' pending surgery and subsequent leave[,]" ValleyLife investigated and determined that Stephens had exhausted his allotted FMLA leave for the previous 12-month period and he would not be eligible for any more FMLA leave until December 17, 2009. (Doc. 92 at 3, Ex. 11.)

On October 26, 2009, Stephens's physician supplied ValleyLife with a physician's statement informing ValleyLife that Stephens's surgery was scheduled for November 4, 2009, he would be hospitalized for 5–7 days, and he would need 4–6 weeks to recover. (Doc. 92 at 6, Ex. 19.) Stephens has not yet been cleared to lift 40-60 pounds, and he does not believe that he could, or should, lift that much weight. (Doc. 89 at 3─4, Ex. 5 at 47–48.)

Christiana Mitchell worked for ValleyLife as a caregiver in a private home assisting a single client. (Doc 89 at 6, Ex. 11 at 6.) On November 8, 2010, while at her home in between one of her two split-shifts, Mitchell injured her ankle. (*Id.*, Ex. 11 at 10.) Mitchell was put on FMLA leave following the accident. (*Id.*, Ex. 11 at 17.) Over the course of her FMLA leave, Mitchell kept in contact with her supervisor Linda Rabe and expressed an apprehension to return to her original client; however, towards the end of her leave, Mitchell stopped communicating with Rabe altogether. (*Id.* at 7, Ex. 12 at 63–64.) As her return date approached, Rabe contacted Mitchell and asked whether she would be able to return to work the next week. (Doc. 92 at 7, Ex. 21 at 16.) Mitchell explained that she was meeting with her doctor in the coming days, and that her doctor had suggested that she undergo physical therapy. (*Id.*) Mitchell did not believe she could have returned to her previous position at ValleyLife until she completed physical therapy.

(Doc. 89 at 6, Ex. 11 at 17, 20–21.)  According to Mitchell, Rabe informed her that if she could not return to work the following week, she would be terminated.  (Doc. 92 at 7, Ex. 21 at 16.)  Rabe, however, testified that Mitchell was terminated because she stopped communicating with Rabe.  (Doc. 89 at 7, Ex. 12 at 63–64; Doc. 92 at 7, Ex. 22.) ValleyLife terminated Mitchell's employment on January 11, 2011.  (Doc. 92 at 7, Ex. 21 at 61.)  A few days later, on January 14, 2011, Mitchell's physician approved her for light duty work.  (*Id.*, Ex. 23.)

Cynthia Ballesteros worked for ValleyLife in the home- and community-based services division from May 29, 2012 until June 5, 2012, caring for a single client at his home.  (Doc. 89 at 7, Ex. 13 at 16; Doc. 92 at 8, Ex. 24 at 14.)  Ballesteros has epilepsy and suffers from seizures; as a result, she needs 8 hours of sleep per night.  (Doc. 92 at 8, Ex. 24 at 11.)  Accordingly, Ballesteros indicated in her ValleyLife job application and during her interview that she would prefer to work a day shift.  (Doc. 92 at 8, Ex. 24 at 11.)  Ballesteros understood that ValleyLife offered two shifts, a morning shift from 7:00 am until 4:00 pm and an afternoon shift from 4:00 pm until 12:00 am.  (Doc. 89 at 7, Ex. 13 at 10–11.)  At the time, only afternoon shifts were available, and thus ValleyLife hired Ballesteros for the afternoon shift.  (*Id.*)  Ballesteros took care of a very difficult client, which, in conjunction with her late hours, caused her great stress.  (Doc. 89 at 8, Ex. 13 at 15, 17.)  As a result, after only two days on the job, Ballesteros requested that she be placed with another client and/or that her shift be changed to the morning.  (Doc. 89 at 8, Ex. 13 at 31–32; Doc. 92 at 8, Ex. 24 at 13.)  She was told that no other positions were available at the time.  (Doc. 89 at 8, Ex. 13 at 32.)  On June 4, 2012, her third day of work, Ballesteros suffered a seizure while caring for her client; her client called 9-1-1 and she was taken to the hospital.  (Doc. 92 at 8, Ex. 24 at 36.)  After her seizure, Ballesteros again contacted an individual at ValleyLife and requested a change in client and/or shift; again, her request was denied due to lack of availability.  (Doc. 92 at 9, Ex. 24 at 38, 60–62.)  Because there were no other clients or shifts available, Ballesteros stopped showing up for her shift; however, Ballesteros does not classify her actions as quitting since she

would have continued to work for ValleyLife if they could have accommodated her need to change clients and/or shifts.  (Doc. 89 at 8, Ex. 13 at 59–62.)  Although Ballesteros never returned to her original shift, she called ValleyLife numerous times over the next few weeks unsuccessfully seeking a different shift; at some point, ValleyLife stopped returning her calls.  (Doc. 92 at 9, Ex. 24 at 87.)

Ibrahim Mansaray[1] worked at ValleyLife as a caregiver and driver.  (Doc. 89 at 9, Ex. 14 at 13.)  His daily tasks included driving ValleyLife clients to their day programs as well as assisting with basic needs like feeding them, changing them, and helping them move.  (Doc. 92 at 9, Ex. 30 at 13.)  On February 5, 2009, Mansaray injured his left knee while lifting a ValleyLife client.  (Doc. 89 at 9, Ex. 14 at 24–26, 85).  Mansaray underwent surgery for his left knee injury and returned to work on light duty.  (Doc. 89 at 9, Ex. 14 at 24; Doc. 92 at 10, Ex. 30 at 63.)  However, not long after returning to work, Mansaray injured his right knee while at home, which again required surgery.  (Doc. 89 at 9, Ex. 14 at 31–32.)  After the surgery, Mansaray informed ValleyLife that his recovery would be lengthy.  (Doc. 92 at 10, Ex. 30 at 71.)  Nevertheless, Mansaray believed that he could have returned to ValleyLife on light duty even after his second knee injury.  (Doc. 89 at 10, Ex. 14 at 48.)  On June 16, 2010, Mansaray received a letter from ValleyLife, signed by Glossa, informing him that as of June 14, 2010, his 12 weeks of FMLA leave would be exhausted, that his employment status did "not mandate additional leave rights beyond this time period," that he had exhausted all of his accrued PTO, and that ValleyLife does not offer unpaid leave, thus his "leave options have now been exhausted."  (Doc. 92 at 10, Ex. 32.)  ValleyLife's "Employee Termination Form" recorded Mansaray's termination reason as he "did not return from FMLA."  (*Id.*, Ex. 33.)

---

[1] Glenn Stephens, Christiana Mitchell, Cynthia Ballesteros, and Ibrahim Mansaray shall be collectively referred to as the "Individuals."  The Complaint, (Doc. 1), also lists Sanfee Dorley, Ashley Hupcik, Barbara Davis, and Anita Yavo, but these individuals' claims were voluntarily dismissed by the EEOC. (Doc. 88 at 13.)

## DISCUSSION

## I.      Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248).  Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it can be considered.  *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002).

## II.   Analysis

The ADA prohibits employers from discriminating against a disabled employee by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."   42 U.S.C. § 12112(b)(5)(A).   "The ADA defines a 'qualified individual with a disability' as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' 42 U.S.C. § 12111(8)."   *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110–11 (9th Cir. 2000) (footnote omitted) *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).   The words "holds or desires" allows the definition of a "qualified individual" to encompass individuals who, even if they could not perform the essential functions of their current position with or without accommodation, could "perform the essential functions of another position in the company which he [or she] 'desires[.]'"   *Id.* at 1111.

In their respective motions for summary judgment, both ValleyLife and the EEOC assert that they are entitled to summary judgment on the issue of whether the Individuals are qualified individuals under the ADA.   (Doc. 88 at 4; Doc. 90 at 11.)   The EEOC also asserts that it is entitled to summary judgment due to ValleyLife's alleged failure to engage in the interactive process with the Individuals and the availability of potential reasonable accommodations.   (Doc. 90 at 7–17.)   ValleyLife counters by arguing that it had no duty to engage in the interactive process, and asserting that it is entitled to summary judgment as to the third and fourth claims because the EEOC cannot demonstrate that it had an inflexible leave policy.   (Doc. 88 at 12.)   ValleyLife concludes by requesting summary judgment on its behalf regarding the EEOC's request for punitive damages.   (*Id.* at 13.)   Both parties move for summary judgment on a record replete with

1   disputes of material fact, and therefore the Court denies both motions.[2]

2   **A.      Summary Judgment as to Claims 1 and 2 is Unavailable at This**
3   **Time for Either Party Given the Factual Disputes Still Prevalent in**
        **the Record**
4

5   "To prevail on an ADA claim, a plaintiff must establish:  (1) that she has a

6   disability; (2) that she was a qualified individual capable of performing the essential

7   functions of the job either with or without reasonable accommodation; and (3) that she

8   was unlawfully discriminated against because of her disability." *McGregor v. Nat'l R.R.*

9   *Passenger Corp.*, 187 F.3d 1113, 1115 (9th Cir. 1999).

10      The plaintiff bears the burden of showing that he is a qualified individual under

11  the ADA.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007).

12  Determining whether an employee is qualified is a two-step inquiry: (1) the plaintiff must

13  show that he "satisfies the requisite skill, experience, education and other job-related

14  requirements of the position" and (2) "[t]he court then considers whether the individual

15  can perform the essential functions of such position with or without a reasonable

16  accommodation." *Id.* (internal quotations omitted).  Essential functions are the "the

17  fundamental job duties of the employment position the individual with a disability holds

18  or desires. The term 'essential functions' does not include the marginal functions of the

19  position." 29 C.F.R. § 1630.2(n)(1).

20      A plaintiff may still be a qualified individual under the ADA even if he cannot

21  perform the essential functions of his current position, so long as he can perform the

22  essential functions of "another position in the company which he desires." *Barnett*, 228

23  F.3d at 1111.  Therefore, a plaintiff is protected under the ADA provided that he "could

24  perform the essential functions of a reassignment position, with or without reasonable

25  _____

26      [2] ValleyLife also sought leave to file a sur-reply. (Doc. 103.) The parties have had
    ample opportunity to brief their respective motions for summary judgment. The Court
27  accepts the Defendant's statement of facts in support of its motion for summary judgment
    as incorporated by reference into its response to the Plaintiff's motion for partial
28  summary judgment pursuant to Rule 10 of the Federal Rules of Civil Procedure. Fed. R.
    Civ. P. 10(c). Therefore, the Defendant's motion is denied as moot.

accommodation, even if [he] cannot perform the essential functions of the current position." *Id.*

Qualified individuals are entitled to participate in an interactive process with their employers to determine what, if any, reasonable accommodations would permit them to remain in their positions. *Barnett*, 228 F.3d at 1111. The obligation to participate in the interactive process is triggered "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Id.* at 1112. An employee seeking a reasonable accommodation "should inform the employer of the need for an adjustment due to a medical condition using plain English and need not mention the ADA or use the phrase reasonable accommodation." *Id.* (internal quotations omitted). However, in some instances an employee need not request an accommodation to trigger the employer's obligation, if the employer: "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." *Id.* (quoting *EEOC Enforcements Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Compliance Manual (CCH), §902, No. 915.002 (March 1, 1999) at 5459).

If there is "genuine dispute that the employer has engaged in the interactive process in good faith," then a defendant cannot obtain summary judgment in an ADA case.[3] *Id.* at 1116. The interactive process requires an employer to:

---

[3] EEOC relies on *Moore v. Marriott Int'l, Inc.*, No. CV-12-00770-PHX-BSB, 2014 WL 5581046, at *1 (D. Ariz. Oct. 31, 2014), to argue that it is "excused from the burden of providing evidence of the reasonableness of any proposed accommodations" to obtain summary judgment in its favor if there is any dispute that ValleyLife failed to engage in the interactive process. (Doc. 90 at 11.) This is not so. *Moore* restates the finding of *Barnett* in a different way; a defendant cannot obtain summary judgment in its favor if there is any dispute that it failed to engage in the interactive process in good faith, and thus "[e]vidence that an employer failed to engage in the interactive process in good faith alleviates the plaintiff of the burden of providing evidence of the reasonableness of her proposed accommodations at the summary judgment stage." *Moore v. Marriott Int'l, Inc.*, No. CV-12-00770-PHX-BSB, 2014 WL 5581046, at *17 (D. Ariz. Oct. 31, 2014).

(1) Analyze the particular job involved and determine its purpose and essential functions;

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

29 C.F.R. § Pt. 1630, App. § 1630.9.   While these steps need not be exactly followed, "[t]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees." *Barnett*, 228 F.3d at 1114.

### 1.      Glenn Stephens

In October 2009, Glenn Stephens underwent surgery in hopes of stabilizing his sternum following an earlier attack by one of his patients at the Tonto home.   Stephens served as a home supervisor for several years prior to his injury, and the parties do not contest that during this time he satisfied "the requisite skill, experience, education and other job-related requirements of the position." *Bates*, 511 F. 3d at 990.   However, Stephens concedes that he was unable to perform the essential functions of his employment prior to his surgery, and that he cannot currently perform them.   During his deposition, Stephens stated that as a group supervisor he had to lift 40-60 pounds 25% of the time. (Doc. 89 at 2.) He also stated that his doctor did not clear this level of activity, and that ValleyLife should not have allowed him to continue to lift that weight. (*Id.*) There are, therefore, no material issues of fact as to whether Stephens can perform the

1    essential functions of a group home supervisor.  He cannot.[4]  In the absence of setting

2    forth an alternative position that Stephens desires, the EEOC cannot obtain summary

3    judgment declaring Stephens a qualified individual, and its motion for summary

4    judgment is denied.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d at 990 (stating that

5    in order to be a qualified individual, a plaintiff must establish that "the individual can

6    perform the essential functions of such position with or without a reasonable

7    accommodation.").

8           Nevertheless, Stephens's inability to perform the essential functions of a group

9    home supervisor does not entitle ValleyLife to summary judgment on Stephens's claims

10   either.  ValleyLife did not engage in an interactive process with Mr. Stephens.  It is

11   precisely in the interactive process that an employee and an employer determine if there

12   is alternative available employment to which the employee is suited.  If they do not

13   engage in this process, then an employer cannot achieve summary judgment by asserting

14   that there were no available alternatives to employment.  *See Barnett*, 228 F.3d at 1113

15   ("To put the entire burden for finding a reasonable accommodation on the disabled

16   employee or, effectively, to exempt the employer from the process of identifying

17   reasonable accommodations, conflicts with the goals of the ADA."). As is mentioned

18   above, a plaintiff may still be a qualified individual under the ADA even if he cannot

19   perform the essential functions of his current position, so long as he can perform the

20   essential functions of "another position in the company which he desires." *Barnett*, 228

21   F.3d at 1111.  Therefore, a plaintiff is protected under the ADA provided that he "could

22   perform the essential functions of a reassignment position, with or without reasonable

23   accommodation, even if [he] cannot perform the essential functions of the current

24   position." *Id.* The EEOC has not yet put forth "another position in the company which

25   [Stephens] desires." And, while it may ultimately have to identify an available

26   reassignment position to prevail on its claim related to Stephens, it does not have to do so

27

28          [4] Because ValleyLife has established that Stephens cannot perform the essential
     functions of a group home supervisor without the testimony of Dr. Ehrlich, the EEOC's
     Motion to Strike his testimony is denied as moot.

to defeat Valley Life's motion for summary judgment on Stephens's claim when it did not engage in an interactive process with Stephens. *Barnett*, 228 F.3d at 1111; (Doc. 89 at 2.).

Therefore, ValleyLife is not entitled to summary judgment at this point because the facts reflect that it had an affirmative duty to engage in the interactive process, and by its own admission, it did not do so. (Doc. 88 at 6.) An employer's obligation to engage in the interactive process is triggered by "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Barnett*, 228 F.3d at 1112. Stephens required surgery following an injury that occurred at work, and ValleyLife was aware of the incident. (Doc. 89 at 3.) Stephens claims that he sought additional unpaid leave to recover from his surgery. (Doc. 92 at 5.) This request was denied, and no further discussions followed. (Doc. 101 at 9.) Instead, ValleyLife sent Stephens a letter informing him that he would work on light duty until his surgery, but then he would have to resign. (Doc. 92 at 5.) This set of facts is uncontested, and at the least presents issues of fact as to whether ValleyLife had a duty to engage in the interactive process and/or whether it did so in good faith. *Barnett*, 228 F.3d at 1112. Therefore, ValleyLife is not entitled to summary judgment on Stephens' claims. *See id.* at 1116 ("We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible.").

### 2. Christina Mitchell

Christina Mitchell broke her ankle and was forced to take FMLA leave. Once her leave ran out, ValleyLife discharged her. Her typical duties included cooking, cleaning, and providing transportation for her client.

There is a genuine dispute as to whether ValleyLife had a duty to engage in the interactive process with Mitchell, and thus ValleyLife cannot obtain summary judgment on her claims. *Barnett*, 228 F.3d at 1116. An employer's obligation to engage in the

interactive process is triggered "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Id.* at 1112.   ValleyLife knew that Mitchell was injured, and was aware that she was on FMLA leave. (Doc. 89 at 6.)  ValleyLife asserts that Mitchell was informed that she was welcome back once she could perform her duties, but that Mitchell never contacted the company again.  (Doc. 89 at 7.)  Mitchell asserts that toward the end of her FMLA leave, she informed her supervisor that her doctor told her that she needed physical therapy. (Doc. 92 at 7.)  In response, Mitchell alleges that she was told that if she could not return by Monday, she would be terminated.  (*Id.*)  If Mitchell's testimony is accurate, then ValleyLife was aware of her need for such an accommodation.  However, if ValleyLife's account is correct, it may prevail.  Therefore, genuine disputes of material fact preclude summary judgment for ValleyLife at this stage.

Further, as is explained in the preceding section, one of the purposes of the interactive process is to identify reasonable accommodations that will permit a disabled employee to remain with the company. If a company does not engage in this process, it cannot obtain summary judgment merely by placing "the entire burden for finding a reasonable accommodation on the disabled employee." *Barnett,* 228 F.3d at 1113.  It may well be that providing an additional five months of leave renders an undue hardship on ValleyLife, and thus it is not a reasonable accommodation.  However, Mitchell's inability to perform the essential functions of her prior role as a caregiver does not entitle ValleyLife to summary judgment because ValleyLife did not engage in the interactive process.

A plaintiff may be a qualified individual under the ADA even if he cannot perform the essential functions of his current position, as long as there is an alternative position that she can perform. *Bates*, 511 F. 3d at 990.  The evidence reflects that Mitchell was cleared for light duty soon after her FMLA leave ran out, and that she holds a degree in "Office Automation Support Systems." (Doc. 92 at 7.) Therefore, she may have been able to perform the essential functions of "another position in the company which [she]

desire[d]." *Barnett*, 228 F.3d at 1111.  ValleyLife asserts that the EEOC has not yet demonstrated that such an alternative position exists, but as explained above, the EEOC does not need to present an alternative position to defeat ValleyLife's motion for summary judgment on Mitchell's in the acknowledged absence of an interactive process.

Nor, however, is the EEOC entitled to summary judgment that Mitchell is a qualified individual. As indicated above, Mitchell still has not been medically cleared to return to her role as a caregiver. Furthermore, although she has been cleared for light duty and she has an educational background that should permit her to adapt to an office position, the EEOC has yet to present evidence of the existence of such a position at ValleyLife. Therefore, the EEOC's motion for summary judgment as to Mitchell's status as a qualified individual is also denied.

### 3.    Cynthia Ballesteros

Cynthia Ballesteros only worked for ValleyLife for roughly one week. (Doc. 92 at 8.) During her interview, she told ValleyLife that she suffered from seizures, and therefore needed to work during the day shift. (Doc. 89 at 7.) She was placed with a difficult client, and her shift ran from 4 pm. until midnight. (Doc. 92 at 8.) Three days into this assignment, she called to request to be moved. ValleyLife asserts this was due to the client, but Ballesteros contends that this was due to the fact that she worked until midnight and worried that the late hours would impact her sleep schedule, which could cause a seizure. (Doc. 89 at 8; Doc. 92 at 8.)  On the fourth day with her client, Ballesteros had a seizure.  (Doc. 89 at 8.)  She again called ValleyLife to inquire about obtaining a different shift, but she was told nothing was available. (Doc. 92 at 9.) At that point, it becomes unclear whether Ballesteros resigned by failing to show up for work, or if she was continuing to contact ValleyLife in hopes of a reassignment. (Doc. 89 at 8; Doc. 92 at 9.)

ValleyLife is not entitled to summary judgment because there is a genuine dispute at to whether ValleyLife had a duty to engage in the interactive process. *Barnett*, 228 F.3d at 1116.  Employers are obligated to engage in the interactive process once an

employee requests it, or "by the employer's recognition of the need for such an accommodation." *Id.* at 1112. An employee seeking a reasonable accommodation "should inform the employer of the need for an adjustment due to a medical condition using plain English and need not mention the ADA or use the phrase reasonable accommodation." *Id.* ValleyLife concedes that it was aware of Ballesteros's epilepsy, and that she preferred to work morning or afternoon shifts due to her condition. (Doc. 89 at 7.) However, it is unclear whether Ballesteros's request was to be moved to a different shift due to her seizures or due to her desire to avoid a difficult client. (Doc. 89 at 8; Doc. 92 at 9.) If Ballesteros requested the reassignment as a reasonable accommodation due to her seizures, then ValleyLife had an obligation to engage in the interactive process. Therefore, because there is a genuine dispute as to whether ValleyLife had a duty to engage in the interactive process, and whether if it did, it did so in good faith, ValleyLife cannot obtain summary judgment.

Likewise, the EEOC is not entitled to summary judgment establishing that Ballesteros is a qualified individual under the ADA. To be considered a qualified individual under the protection of the ADA, a plaintiff must be a current employee, or someone currently seeking a position with the company, at the time of the alleged discrimination. *Johnson v. Bd. of Trs. of Boundary Cty. Sch. Dist. No. 101*, 666 F.3d 561, 564 (9th Cir. 2011). The act defines a "qualified individual" as one that can perform the essential functions of the employment position that such individual holds or desires. " 'Holds,' in the present tense, refers to current employees. Likewise, 'desires,' in the present tense, refers to people who presently want jobs, as opposed to those who do not, protecting job applicants against discrimination." *Weyer*, 198 F.3d at 1112. Therefore, "former employees are not 'qualified individuals' capable of suing" under the ADA. *Id.* at 1110. As the facts currently stand, the EEOC cannot definitively illustrate that Ballesteros is a current employee.

/ / /

/ / /

### 4.   **Ibrahim Mansaray**

Ibrahim Mansaray worked as a caregiver and a driver at ValleyLife.  (Doc. 89 at 9; Doc. 92 at 10.)  However, he injured his knee in 2009 and required surgery.  (Doc. 89 at 9; Doc. 92 at 10.)  He informed ValleyLife that his recovery would take a considerable amount of time, and he was not able to return to work once his FMLA leave expired. (Doc. 89 at 9; Doc. 92 at 10.)  According to Mansaray, he would have taken a light duty position at ValleyLife as he recovered if ValleyLife had offered it.  (Doc. 92 at 10.) ValleyLife claims that no such position was available, and that Mansaray never contacted ValleyLife to seek further employment after his surgery.  (Doc. 89 at 10.)  Instead, he joined a company that performs similar services to ValleyLife that does not require heavy lifting. (*Id.*)  Mansaray contends that ValleyLife sent him two letters informing him that once his FMLA leave was exhausted, he could not take any additional leave.  (Doc. 92 at 10.)  Furthermore, Mansaray asserts that following these letters, he received another letter discharging him from his position and that no one at ValleyLife ever offered to discuss reasonable accommodations with him. (*Id.*)

ValleyLife is not entitled to summary judgment at this stage in the proceedings because there is a genuine dispute at to whether they had an obligation to enter into the interactive process with Mansaray. The obligation to enter into the interactive process is triggered by the "employer's recognition of the need for such an accommodation." *Barnett*, 228 F.3d at 1112. According to Mansaray's version of events, he told a ValleyLife official that his recovery would take a long time. There is thus a reasonable issue of fact as to whether Valley Life would need to explore reasonable accommodations with Mansaray.  Drawing the facts in the light most favorable to EEOC, summary judgment is inappropriate. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Likewise, the EEOC is not entitled to summary judgment establishing that Mansaray is a qualified individual.  A qualified individual is someone that "can perform the essential functions of the employment position that such individual *holds or desires.*" *Weyer*, 198 F.3d at 1112.  This definition requires that a qualified individual be a current

1    employee when the alleged discrimination takes place. *Id.* at 1110.  It is unclear that the
2    EEOC can establish that Mansaray is a qualified individual. ValleyLife asserts that
3    Mansaray never contacted them following his surgery, therefore, he quit. Furthermore, it
4    is unclear that Mansaray is or ever will be capable of heavy lifting again, and neither
5    party contests that heavy lifting is an essential function of his former position, and that
6    his current employment does not require it.  (*Compare* Doc. 60 at 5–6 *with* Doc. 88 at
7    10–11.)  Thus, there are material questions of fact that preclude summary judgment for
8    the EEOC at this point.

9
10    **B.    ValleyLife is Not Entitled to Summary Judgment on the Third and
          Fourth Claims Because there are Genuine Disputes of Material Fact
11          as to Whether ValleyLife Administered an Inflexible Leave Policy**

12    The ADA makes it unlawful for employers to "discriminate against a qualified
13    individual on the basis of disability in regard to job application procedures, the hiring,
14    advancement, or discharge of employees, employee compensation, job training, and other
15    terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Under the
16    ADA, discrimination includes "using qualification standards, employment tests or other
17    selection criteria that screen out or tend to screen out an individual with a disability or a
18    class of individuals with disabilities unless the standard . . . is shown to be job-related for
19    the position in question."  42 U.S.C. § 12112(b)(6).  The definition also includes
20    "utilizing standards, criteria, or methods of administration that have the effect of
21    discrimination on the basis of disability."  42 U.S.C. § 12112(b)(3).  Per the EEOC's
22    Complaint, ValleyLife violated the ADA's prohibition on discrimination by utilizing an
23    inflexible leave policy that screened out individuals with disabilities and had a
24    discriminatory effect on those with disabilities.  (Doc. 1 at 12.)

25    ValleyLife asserts that it is entitled to summary judgment on these claims because
26    there is no evidence that ValleyLife's leave policy is inflexible.  In support of this, it
27    points to testimony from its employees, such as Nancy Glossa, ValleyLife's human
28    resource manager, who testified that after FMLA leave is exhausted, ValleyLife extends

1    unpaid leave.  Other testimony reflects that ValleyLife typically offers up to six weeks of

2    unpaid leave if an employee is not yet eligible for FMLA leave.  (Doc. 88 at 13.)

3          The EEOC on the other hand, offers evidence that ValleyLife discharged three

4    employees upon the expiration of their FMLA leave, and it provides the employees'

5    respective discharge letters to support the claim that they were discharged  because their

6    FMLA leave expired.  (Doc. 101 at 5.)  It further claims that ValleyLife's handbook

7    reflects an inflexible leave policy even if the testimony of the employees refutes it.  (Doc.

8    101 at 5.)  Taking these facts as true, and drawing "all justifiable inferences" in favor of

9    the EEOC, this is an issue that could be reasonably resolved in favor of either party.

10   *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see Cal. Architectural Bldg. Prods., Inc.*,

11   818 F.2d at 1468.  Therefore, summary judgment as to the third and fourth claims is

12   denied.

### C.    Summary Judgment is Denied as to the Commingling of Employee Records Claim

15         The ADA specifies that employers may require medical examinations, but if they

16   do, "information obtained regarding the medical condition or history of the applicant"

17   must be "collected and maintained on separate forms and in separate medical files."  42

18   U.S.C. § 12112(d)(3)(B).  Furthermore, medical information obtained in this matter

19   should be treated as "a confidential medical record."  *Id.*

20         ValleyLife asserts that because its Human Resources Manager testified that

21   ValleyLife does not commingle records, it should be entitled to summary judgment on

22   this claim.  However, the EEOC disputes this testimony by pointing to ValleyLife's own

23   admissions during discovery.  Pursuant to ValleyLife's first responses to the EEOC's first

24   requests for production: "Upon termination of employment, all files on a single employee

25   are combined into a single file. If certain records, such as medical records, are not in the

26   complete files disclosed, it is because there were no medical records for that individual."[5]

---

27         [5] In its Reply briefing, ValleyLife raises the argument that because this occurred

28   after termination, it is irrelevant.  (Doc. 106 at 5.) However, ValleyLife does not cite to
     any law that supports that position, and this Court will not respond to an argument that is

(Doc. 102-1 at 10, Doc. 101 at 14.)  This response indicates that there remains a factual dispute as to whether ValleyLife actually commingled medical records with the rest of an employee's files, and therefore summary judgment on this claim is inappropriate at this time.

### D.    Summary Judgment on the Punitive Damages Claim is Denied

Section 1981a permits a plaintiff to recover punitive damages from an employer "if the complaining party demonstrates that the [employer] engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  For an employee to obtain punitive damages under § 1981a, the Supreme Court held that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).  Therefore, this standard involves an analysis of "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535.

ValleyLife contends that it is entitled to summary judgment on the EEOC's request for punitive damages because it has "no intractable leave policy" and it therefore "acted in good faith from a policy standpoint." (Doc. 88 at 16.)  However, the testimony of its human resources director, Nancy Glossa, indicates that she was well trained on the ADA and arguably should have known the law.  (Doc. 101 at 16.)  As outlined in *Kolstad*, the question is not whether ValleyLife knew it was acting in a discriminatory manner; the question is whether ValleyLife was aware "that it may be acting in violation of federal law." *Kolstad*, 527 U.S. at 526.  Glossa's testimony reflecting her expertise with the ADA indicates that ValleyLife very well could have been aware that it was acting in violation of federal law.  Furthermore, the EEOC presented genuine disputes of

---

raised for the first time in a reply brief. (*Id.*); *see Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 n. 6 (9th Cir. 2004) (declining to consider an argument raised in a reply brief because the other party had not yet had a chance to respond).

fact related to its claims that ValleyLife terminated the Individuals' employment and refused to supply reasonable accommodations for the Individuals once their FMLA leave expired that could affect the resolution of the EEOC's claim for punitive damages. Therefore, summary judgment is inappropriate at this time.

<b>CONCLUSION</b>

Given the many disputes of material fact, the entry of summary judgment is inappropriate for either party.  Accordingly, the Defendant's Motion for Summary Judgment as well as the Plaintiff's Motion for Partial Summary Judgment are denied. Both parties have had ample opportunity to fully develop their arguments on this matter. Therefore, ValleyLife's Motion to File a Sur-Reply is also denied.

**IT IS THEREFORE ORDERED:**

1.   Defendant ValleyLife's Motion for Summary Judgment (Doc. 88) is **DENIED**.

2.   Plaintiff EEOC's Motion for Partial Summary Judgment (Doc. 90) is **DENIED**.

3.   Plaintiff EEOC's Motion to Strike (Doc. 96) is **DENIED as moot.**

4.   Defendant's Motion for Leave to File a Sur-Reply (Doc. 103) is **DENIED**.

Dated this 19th day of January, 2017.

_____
Honorable G. Murray Snow
United States District Judge